FILED

06/07/2024

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2023

**BRIAN C. FRELIX v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Williamson County**
**No. CR-190587      Joseph A. Woodruff, Judge**

———————————————————

**No. M2023-00291-CCA-R3-PC**

———————————————————

Petitioner, Brian C. Frelix, appeals from the Williamson County Circuit Court's denial of his petition for post-conviction relief related to his convictions for four counts of aggravated robbery, four counts of aggravated assault, one count of aggravated burglary, and one count of theft of property valued at $1,000 or more, but less than $10,000. Petitioner argues that the post-conviction court erred in denying relief based upon his claims that he received ineffective assistance of counsel because trial counsel failed to (1) raise a Double Jeopardy issue at trial or on direct appeal related to two of his aggravated robbery charges; and (2) raise a *Brady* issue on direct appeal related to the State's failure to disclose three letters sent to the police by a jailhouse informant. Petitioner also raises a freestanding claim that the State improperly withheld the letters in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Cayley J. Turrin (on appeal), Brentwood, Tennessee; and Marci McClellan Curry (at hearing), Franklin, Tennessee, for the appellant, Brian C. Frelix.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Kim R. Helper (at first and second post-conviction hearings), District Attorney General; and Stacey Edmonson[1] (at second post-conviction hearing), Deputy District Attorney General, for the appellee, State of Tennessee.

---

[1] General Edmonson became the District Attorney General for the 21st Judicial District after General Helper passed away in March 2023.

## OPINION

## I.    Procedural history

This case is the second appeal related to Petitioner's post-conviction petition challenging his Williamson County convictions arising from his participation in an October 12, 2013 home invasion. In the first post-conviction appeal, this court remanded the case to the post-conviction court with instructions for the court to allow Petitioner to testify. Petitioner had been absent from the initial post-conviction hearing due to testing positive for COVID-19. *Frelix v. State*, No. M2020-01653-CCA-R3-PC, 2022 WL 363922, at *1 (Tenn. Crim. App. Feb. 8, 2022) (*Frelix III*), *no perm. app. filed*. This court summarized the previous post-conviction proceedings as follows:

> [Petitioner]'s convictions in the present case relate to a Williamson County home invasion in which four victims were held at gunpoint while the house was searched for valuables. *State v. []Frelix*, No. M2017-00388-CCA-R3-CD, 2018 WL 2722796, at *1 (Tenn. Crim. App. June 6, 2018) (*Frelix I*), *perm. app. denied* (Tenn. Sept. 13, 2018). While in the Williamson County Jail, the Petitioner gave a pretrial statement in which he incriminated himself for offenses in both Davidson and Williamson Counties. []*Frelix v. State*, No. M2019-01070-CCA-R3-PC, 2020 WL 5888144, at *1 (Tenn. Crim. App. Oct. 5, 2020) (*Frelix II*), *perm. app. denied* (Tenn. Mar. 17, 2021). The Petitioner's trial counsel in the Williamson County case filed a motion to suppress the Petitioner's statement on the basis that the Petitioner had been urged by another inmate, who was working as an agent of the State, to give the statement to a police officer. *Id.* at *1. The trial court denied the motion, and this court later affirmed its ruling. *Frelix I*, at *15-17. [T]he Petitioner was convicted of the Williamson County offenses at a trial. *Id.* at *1. He then pleaded guilty to the Davidson County offenses. *Frelix II*, at *1. He later filed a Davidson County post-conviction petition, in which he alleged that his Davidson County trial counsel had been ineffective in failing to file a motion to suppress his pretrial statement. *Id.* The Davidson County post-conviction court denied relief, and on appeal, this court affirmed. *Id.* at 2-7. [T]he Petitioner also filed the present post-conviction proceeding in Williamson County. In the present case, his pro se petition alleged that (1) trial counsel had been ineffective because counsel failed to investigate facts to show that an informant was an agent of the State, failed to object to the indictment as being multiplicitous, and failed to raise [or] challenge on appeal the imposition of consecutive sentences, (2) he was denied due process when the State allowed perjured trial testimony "to go uncorrected," (3) he was denied due process by virtue of the trial court's imposition of

consecutive sentences. The Williamson County post-conviction court appointed counsel, who filed an amended petition which reiterated the claims raised in the pro se petition. The Williamson County Circuit Court denied post-conviction relief[.]

*Frelix III*, 2022 WL 363922, at *1.

## II. Initial post-conviction proceedings

This court detailed the evidence presented at the first post-conviction hearing as follows:

The [October 19, 2020] post-conviction hearing began with a preliminary discussion of whether the hearing could take place due to the Petitioner's absence due to a positive COVID-19 test. [T]he Petitioner was incarcerated, and prison officials would not provide transportation due to his illness. Post-conviction counsel stated that he had received a message from the Petitioner on the previous Friday evening that the Petitioner "was relieving" counsel of his duties of representation and that the Petitioner wanted to proceed pro se. The record reflects that the hearing took place on October 19, 2020, and this court takes notice that this date was a Monday. *See* Tenn. R. Evid. 201. Counsel stated that the Petitioner was "invested" in the case and "would not mind being present in court at a future date." Additionally, counsel stated that the Petitioner's "main objective" was to have "more time to take in the new appeal that occurred just two weeks ago" in the Petitioner's Davidson County post-conviction case. The court ruled that the Petitioner did not have a constitutional right to be present at a post-conviction hearing because the right to post-conviction relief was statutory, not constitutional, and that the Petitioner's presence "can be excused because . . . of the prevailing public health emergency." The court denied the Petitioner's motion to discharge counsel and for a continuance.

The post-conviction court also considered whether the post-conviction petition was rendered moot or subject to issue preclusion or collateral estoppel due to this court's opinion in the Petitioner's Davidson County post-conviction case. *See generally Frelix II*. Post-conviction counsel noted that the Petitioner had not been represented by the same trial attorney in both the Williamson County and Davidson County conviction proceedings and argued that the post-conviction court should consider two issues: (1) whether the Petitioner's Williamson County trial counsel had provided ineffective assistance and (2) whether prosecutorial misconduct

occurred because the State failed to provide exculpatory material to the defense pursuant to *Brady*[.] The court ruled that it would proceed with the hearing and would reserve its ruling on "whether the element of causation is disposed of as a matter of law by the [post-conviction case] out of Davidson County." The court stated that if it determined that this court's opinion in *Frelix II* did not "as a matter of law dispose of the causation issue," it would "take action accordingly," including having a subsequent hearing for the receipt of any additional proof.

Trial counsel testified that he was appointed to represent the Petitioner in March 2014. He identified the motion to suppress that he filed on the Petitioner's behalf. The State also offered as exhibits four letters from Michael Reynolds, an inmate with whom the Petitioner had been incarcerated. One letter was addressed to Brentwood Police "Chief of Detectives," and the other three were addressed to Brentwood Police Detective [Alan] Keller. Counsel did not recall if he had seen the latter three letters during his representation of the Petitioner.

An excerpt from the transcript of the motion to suppress was received as an exhibit. Counsel agreed that the transcript excerpt showed that a police officer testified at the suppression hearing that he gave Mr. Reynolds some postage stamps as "an act of kindness." An excerpt from the transcript of the Davidson County post-conviction hearing was received as an exhibit. Counsel agreed that the transcript appeared to show that the police officer witness had given Mr. Reynolds stamps to send mail from the jail to the witness.

Trial counsel testified that when a general sessions judge asked him to accept appointment as the Petitioner's trial counsel, the Petitioner had been "acting very bizarrely" and "talking to the walls," which led counsel to request a mental evaluation. Counsel said the mental evaluation "came back okay," that a preliminary hearing was held in general sessions court, that counsel told the Petitioner not to "talk to anyone," and that counsel was appointed to represent the Petitioner in circuit court. Counsel said he later met with the Petitioner at the jail, at which time the Petitioner advised him that the Petitioner met with the police sometime after the arraignment. We have taken judicial notice of the appellate record in the Davidson County post-conviction case. *See* Tenn. R. Evid. 201(b), (c). The transcript of the Davidson County post conviction hearing reflects that Detective Keller testified as follows:

- 4 -

Q.     . . . [Mr. Reynolds] was telling you, he was telling you during the interview that he needed to keep in contact with you guys, so he could give more statements, he could let you know what he is doing with [Petitioner].

A.     Okay.

Q.     Okay.  And so is that why you gave him the stamps?

A.     I'm assuming it must be.  Yeah.  If he wanted to set up a meeting with [Petitioner] to talk him into coming to talk to me, to see if he could do that then that is I imagine why I gave him two stamps.

Q.     Okay.  And, he, as a result of these two stamps he sent you additional, Mr. Reynolds sent you additional letters; is that correct?

A.     I believe so.

Trial counsel testified that he obtained funds for an investigator, that he obtained the discovery materials, and that he and the investigator reviewed the discovery materials.  Counsel said that he and the investigator "tried to look into" Mr. Reynolds and that by the time the motion to suppress was heard, Mr. Reynolds "was out of the jail system."  Counsel said his understanding was that Mr. Reynolds was no longer in Tennessee by the time of the suppression hearing.  Counsel said that he tried to find Mr. Reynolds in order to present Mr. Reynolds as a suppression hearing witness but that counsel was unable to locate Mr. Reynolds.

Regarding the motion to suppress, trial counsel testified that he argued, first, that the Petitioner had given his pretrial statement after the arraignment and after the State was aware the Petitioner was represented by counsel, second, that Mr. Reynolds had acted as an agent of the State in coercing the Petitioner to give the statement, and third, that the Petitioner did not give the statement voluntarily "because of the conditions of the jail being isolated for so long."  Counsel said, "I raised everything I could possibly think of."  Counsel said he offered a witness from the jail, whose name he did not recall, to testify about jail records showing Mr. Reynolds's contact with the Petitioner while the Petitioner was in solitary confinement for an

- 5 -

extended period of time. Counsel thought a video recording existed which showed the Petitioner giving the statement in Mr. Reynolds's presence while they ate McDonald's food provided by the police. Counsel agreed that he argued at the suppression hearing and on appeal of the Williamson County convictions that Mr. Reynolds was compensated by the police and therefore was an agent of the State, based upon the stamps an officer gave to Mr. Reynolds, the food and coffee the police gave Mr. Reynolds, and the telephone calls Mr. Reynolds was allowed to make.

Trial counsel testified that he objected to "everything [he] could possibly think of" at the trial. He said he argued successfully that "the kidnapping and the robbery were too similar" and that the jury acquitted the Petitioner of the kidnapping charges. He said, "I didn't think I had much chance of anything but that."

Trial counsel testified that that the Williamson County District Attorney had an "open file" discovery policy. He acknowledged that he did not take advantage of the opportunity to view the district attorney's file. He did not know if the defense investigator viewed the district attorney's file but said she "reviewed all the discovery."

Trial counsel testified that he met with the Petitioner at the jail more than once. He did not specifically recall discussing the State's evidence with the Petitioner, but counsel was sure he had. Counsel said he communicated any plea offers to the Petitioner.

The appellate record of the Petitioner's Williamson County case was received as an exhibit.

Post-conviction counsel asked the post-conviction court to take judicial notice that Detective [] Keller testified at both a March 13, 2015 hearing and an April 12, 2019 hearing. Counsel did not explain further, but the court observed, "So Detective Keller testified one way at the motion to suppress in Williamson County when [trial counsel] was representing [Petitioner] and he testified differently at [the post-conviction] proceeding in Davidson County, correct?" Counsel responded affirmatively. The court noted, however, that the Petitioner's Williamson County trial occurred before Detective Keller's testimony at the Davidson County hearing.

After receiving the evidence, the post-conviction court denied relief in a written order. The court reiterated its findings at the hearing that post-

conviction relief was a statutory, not a constitutional, right. The court noted that Tennessee Code Annotated section 40-30-110 provides for a petitioner's presence to testify at a post-conviction hearing "if the petition raises substantial question of fact as to events in which the Petitioner participated," and the court found that the Petitioner had not raised such issues in the present case. The court noted that the Petitioner's "claims exclusively concern the nature of the relationship between witness Michael Reynolds and law enforcement," which involved events in which Mr. Reynolds and Detective Keller, but not the Petitioner, participated. The court also found that the Petitioner had not presented substantial questions of fact, noting that the Petitioner had previously and unsuccessfully litigated the suppression issue in both the Williamson County conviction proceedings and in the Davidson County post-conviction case. Thus, the court explained that it had denied the Petitioner's motion to continue because the Petitioner did not have a right to be present at the hearing, in view of the facts of the case.

Regarding the Petitioner's claim that trial counsel was ineffective in failing to investigate the facts surrounding the circumstances in which the Petitioner made the statement to Detective Keller, the post-conviction court noted this court's conclusion in the Davidson County post-conviction appeal that the letters from Mr. Reynolds to Detective Keller did not contain any relevant information regarding whether Mr. Reynolds was an agent of the State in procuring the Petitioner's pretrial statement. *See Frelix II*, 2020 WL 5888144, at *11. The court found, as well, that counsel could not be faulted for not anticipating at the time he represented the Petitioner that Detective Keller would testify differently at some future time regarding his reason for giving postage stamps to Mr. Reynolds. The court found that the Petitioner had failed to show that counsel's performance had been deficient. The court found, as well, that the State had sufficient evidence, even if the trial court had suppressed the Petitioner's statement, to support a conviction. Thus, the post-conviction court found that the Petitioner had not shown prejudice. The court denied relief.

*Frelix III*, 2022 WL 363922, at *1-4 (footnote omitted). On appeal, this court concluded that the case should be remanded for consideration of Petitioner's request to proceed pro se and for Petitioner to testify "regarding any issues raised in the petition about which he has factual knowledge." *Id.* at *5.

However, this court continued to discuss Petitioner's ineffective assistance of counsel issue relative to trial counsel's investigation of the "alleged agency relationship

- 7 -

between Mr. Reynolds and Detective Keller." *Id.* at *6. This court concluded that Petitioner was not entitled to relief, stating as follows:

> In support of his argument that trial counsel did not adequately investigate whether an agency relationship existed between Mr. Reynolds and Detective Keller, the Petitioner notes the discrepancy between Detective Keller's testimony at the Williamson County suppression hearing and at the Davidson County post-conviction hearing regarding Detective Keller's motivation for providing two stamps to Mr. Reynolds. The post-conviction court found that counsel could not be faulted for failing to know, at the time counsel represented the Petitioner in the Williamson County conviction proceedings, that Detective Keller would testify differently at another hearing held after the Petitioner was convicted at the Williamson County trial. Counsel testified that he and the defense investigator reviewed the discovery materials. Counsel pursued a motion to suppress, which the trial court denied after a hearing. Nothing in the record suggests that counsel could have known that additional investigative efforts would have led to the discovery of information that was helpful to the defense and that the information would yield a more favorable result at the Petitioner's Williamson County trial. Further, the Petitioner has not provided legal authority to support a conclusion that a police officer's providing two postage stamps to an inmate is sufficient to create an agency relationship between the inmate and the State when the inmate uses the stamps to send letters to the officer about incriminating statements made by another inmate. To the contrary, the issue regarding the stamps was raised in the previous appeals. *Frelix II*, at *8-9; *Frelix I*, at *1. This court held in both *Frelix I* and *Frelix II* that no agency relationship existed between Mr. Reynolds and Detective Keller. *Frelix II*, 2020 WL 5888144, at *7-9; *Frelix I*, 2018 WL 2722796, at *15-17.

*Id.* at *7.

### III. Post-conviction proceedings on remand

The technical record in this appeal reflects that Petitioner sent the post-conviction court a letter dated March 22, 2022, in which he stated that he no longer wished to proceed pro se and requested that the court appoint new post-conviction counsel. The post-conviction court subsequently appointed new counsel.

At the second post-conviction hearing on November 16, 2022, the post-conviction court noted that post-conviction counsel had not filed an amended petition; post-conviction

counsel stated that Petitioner was relying on the October 12, 2020 "Notice of Rescission of Certain Stipulations" ("the Notice") that previous post-conviction counsel filed before the first post-conviction hearing.[2] Relevant to this appeal, the Notice stated that Petitioner did not stipulate to the following issues:

> 2. "Ineffective Assistance of Counsel by Failing to Raise a Double Jeopardy Claim."[3]
>
> NOT STIPULATED. Petitioner maintains Counsel was ineffective for failing to raise double jeopardy claims.
>
> . . . .
>
> 10. "Trial Counsel Did Not Investigate/Present at Trial the Damage of . . . Withheld Evidence: Two Stamps on Envelopes Containing Letters between [Mr.] Reynolds and [Detective] Keller.
>
> NOT STIPULATED. [*Frelix I*, 2018 WL 2722796, at \*17] has earlier decided that the State did not create an agent out of Mr. Reynolds, but there still could have been ineffective counsel in the trial attorney not doing enough to establish the affirmative conduct requirement to make one an agent of the State. The trial attorney's oversight on this point could have been deficient and consequently prejudiced [] Petitioner by not stressing the actual value of two stamps given to an inmate and the vital role the two mailed letters and their contents could have played in establishing an agency relationship.

Post-conviction counsel explained that "while they don't contain any exculpatory evidence, [Petitioner] is claiming that [the additional letters] were not turned over in violation of a [d]iscovery [m]otion." The post-conviction court noted that a *Brady* issue had been raised in Petitioner's Davidson County post-conviction petition and that this court had addressed it.

---

[2] The technical record contains an October 5, 2020 "Trial brief and Stipulations," in which Petitioner's previous post-conviction counsel conceded that several of Petitioner's issues, including the double jeopardy issue, had been previously determined as a matter of law. This document was not included in the previous post-conviction appellate record. *See Frelix III*, 2022 WL 363922, at \*4.

[3] The double jeopardy issue was also raised in issue 8 in the Notice, rephrased as "Trial Counsel Did Not Properly Challenge Any Double Jeopardy Issues."

Four letters written by Mr. Reynolds were received as exhibits. A letter dated March 12, 2014, was addressed to "Chief of Detectives." Mr. Reynolds wrote that he was in "lockdown" with Petitioner, who had told him "numerous things" about the Williamson County robbery. Mr. Reynolds also claimed to have information about robberies in Belle Meade and Opry Mills. Mr. Reynolds requested to be transported to the police department so as not to be seen talking to the police at the jail. Mr. Reynolds noted that Petitioner and "these guys" were "sick monsters" and asked the reader to let him know if he could be of help.

A letter dated March 20, 2014, did not contain a salutation, but the envelope was addressed to Detective Keller. Mr. Reynolds stated that he needed to be transported "back there" to see Detective Keller because he had "a lot more information on some other robbery, from earlier in the sum[m]er with same suspects[.]" Mr. Reynolds averred that the information was "100 times more fruitful" than the information he previously provided and that it would "blow [Detective Keller] away." He stated that he "[found] out about the (acoustic) guitar the detective asked about[.]" Mr. Reynolds wrote that he was "100% confident this meeting will bring swift closure to all cases." Below his signature, Mr. Reynolds wrote "Wendys."

In a letter to Detective Keller dated March 25, 2014, Mr. Reynolds conveyed that he had information related to the Williamson County case, as well as cases in Nashville, Belle Meade, and Mt. Juliet. Mr. Reynolds wrote, "Also as you can see on last letter I didn't get to use your stamps[.]" Mr. Reynolds noted that an unnamed man "keeps trying to look over my shoulder." He stated that some information from his interview was "off a little" and that he knew where "the [.]357 is that Quan used" during a rape. Mr. Reynolds wrote, "You may want to have this conversation before week is up."

In a letter to Detective Keller dated March 30, 2014, Mr. Reynolds stated that he needed to meet again and that "Brian has not been completely truthful about everything[,] also his lawyer showed up the next day and Brian is a little p---ed at me for tricking him to confessing[.]" Mr. Reynolds wrote that "[i]t mainly has a lot to do with Belle Meade[.]" Mr. Reynolds noted that he was trying to move to a different part of the jail and asked for Detective Keller's help facilitating the transfer. Mr. Reynolds stated that "Brian['s] lawyer" had indicated to Petitioner that he was going to get his confession suppressed. Mr. Reynolds stated that Detective Keller would be happy with what Mr. Reynolds "came up with" and that one of the co-defendants was "not the one who beat the old women down," which related to one of the Davidson County cases. Mr. Reynolds continued,

> IDK if I can pull it off but I think I can I will get Brian to write a
> statement to how he lied some in that last interview TRY to get this done

- 10 -

today[.] Its going to be hard but I think I can[;] his lawyer said no more talking or writing[.] Brian said I f--ked him over.

The reverse side of the paper contained the following statement: "Be nice to have a few candy bars or honey buns and diet coke oh I think you are out of smokes to[.] It would be a nice present [smiley face] Also remind me to bring up [illegible] its important [illegible] case[.]"

Petitioner testified that he wished to raise a double jeopardy issue and that, according to his legal research, he believed that the incident was "one episode of theft, albeit that there were four people there." When asked whether he discussed double jeopardy with trial counsel, Petitioner responded negatively and noted that he did not realize that a potential double jeopardy issue existed until trial counsel had "been off [Petitioner's] case for probably a year or two." Petitioner stated, though, that he had written to trial counsel inquiring about raising double jeopardy in the direct appeal and that trial counsel declined to include it. Petitioner noted that he did not think that all of the physical items that were taken were introduced at trial to "corroborate or say that this was actually the things that were taken[.]"

Relative to Mr. Reynolds's letters, Petitioner testified that he did not discuss them with trial counsel because he "didn't think of those letters at the time." Petitioner noted that, after this court discussed the postage stamps on appeal, he realized that "the[re] might be some evidence that [he did not] know about where [Mr.] Reynolds actually wrote the detectives, those stamps were not included. He didn't have those stamps yet." Petitioner stated that he never saw the letters that were mailed using the two stamps and that he asked his Davidson County attorney to "look into it" because trial counsel had withdrawn from his Williamson County case after this court issued its opinion.

Petitioner testified that two of Mr. Reynolds' letters were not presented at the suppression hearing; he noted that the March 30, 2014 letter "speaks on actually trying to get [Petitioner] to do something" and "get him to say this or that." Petitioner opined that Mr. Reynolds' March 30 letter "corroborates the March 30th letter that [Petitioner] wrote" and noted the "coincidence" that the only letters that corroborated his suppression hearing testimony were not introduced at the suppression hearing.[4]

---

[4] We take judicial notice of this court's record in the previous Williamson County post-conviction appeal, which included the suppression hearing transcript and exhibits. *See* Tenn. R. Evid. 201(b), (c); *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009). Relative to the letters at issue, that record reflects that only Mr. Reynolds' March 12, 2014 letter to the "Chief of Detectives" was presented at the suppression hearing.

- 11 -

Petitioner testified that his issue related to whether the letters were "supposed to be presented" and whether they were exculpatory for purposes of *Brady*. He stated that the letters were not given to "any of [his] counsels until the last minute."

On cross-examination, Petitioner clarified that he did not understand what double jeopardy was at the time of his trial. He denied that he told trial counsel that he should raise the issue on appeal. Petitioner acknowledged the possibility that the trial transcript reflected testimony from the victims about the items taken from them.

Relative to Mr. Reynolds' letters, Petitioner agreed that Mr. Reynolds' letters were not introduced at trial and that Mr. Reynolds did not testify. When asked how the letters exculpated Petitioner for the Williamson County offenses, Petitioner responded, "Well, I know *Brady* is not just about exculpatory or inculpatory. It's about material evidence. And the relevancy of it is that all this was actually given authoritative by a Detective in Williamson County. That's the whole point, he gave these stamps and wrote all this stuff."

When asked if his concern was "the stamps," Petitioner replied:

Without the stamps, he wouldn't have been able to write this March 30[] letter . . . . I'm saying without this, the State put themselves in the situation by giving those stamps, those ways of communication.

. . . I'm saying if I wanted to present to the jury, hey, look at this stuff . . . about their relationship. I was not able to present any of this or any type of strategy could have been made with [trial counsel] about any of this evidence. We didn't know about it. So it should have been turned over so that I could make the decision if I wanted to present to the jury how in bed with the State this man was. I wasn't given that opportunity.

Petitioner agreed that this court previously concluded that Petitioner's statements to Detective Keller were voluntary.

Upon examination by the post-conviction court, Petitioner stated that he "fault[ed] trial counsel] in not investigating" the letters "because . . . Detective Keller actually said there were other letters that he wrote, but only one was actually put into evidence. If he had investigated he might have been able to find where those were as my other counsel [in Davidson County] was able to do." Petitioner clarified that he was referring to his Davidson County post-conviction attorney. Relative to the Davidson County post-conviction proceedings, Petitioner stated,

We received them too late, so they said they [were] gonna file it. By the time they said they were going to late file it, they asked [the prosecutor] to present the evidence. They said she gave evidence that they already had so they just ruled instead of looking at the new evidence.

Petitioner elaborated that Mr. Reynolds' March 30 letter showed "a furtherance of I can get him to do this, I can get him to do that." He noted that Mr. Reynolds's March 30 letter contained the same information that Petitioner included in his March 30 letter to Detective Keller. Petitioner stated that the letters demonstrated "the control that there was at that time." Petitioner averred that, although trial counsel raised the coercion issue on appeal, he had no supporting evidence, which the letters would have provided. Petitioner commented, "[H]ad it not been for the State saying we're going to help you on your case, and giving him the ways of communication, it might not have happened." Petitioner stated that letters would have informed "what [he was] able to do and how [trial counsel was] able to investigate. But [trial counsel] did no investigation to figure those things out."

Upon examination by the post-conviction court, Petitioner averred that the information in his March 30 letter to Detective Keller was untrue; he commented, "It was actually forced upon me to write that letter." Petitioner asserted that his video-recorded interview with Detective Keller was partially true, and he stated,

The whole point . . . was I was not on my own volition trying to convince anything. This was all a threat of my life and my family, and this man saying, Hey, you can need to come do this, or I'm going to kill your family. That's where my mind went to a whole different state of being.

Petitioner stated relative to Mr. Reynolds' statement about being unsure if he could "pull it off" that, once Mr. Reynolds was moved to a different part of the jail, Mr. Reynolds "had to send word [of] the threats on [Petitioner's] life." Petitioner agreed that he had testified to the alleged coercion at the suppression hearing. Petitioner stated his belief that the letters were "withheld" and "never presented, never given to [trial counsel]; however, he also stated that trial counsel "never investigated to look in the file to see if this evidence actually existed."

The State brought to the post-conviction court's attention this court's opinion in *Frelix II*, in which this court discussed that the Davidson County post-conviction court gave Petitioner the opportunity to "revisit the proof" after the additional letters were late-filed but that Petitioner took no further action. The State argued that the inaction "goes to show that they really have no relevance as it relates to this case, and his actions in reaching out to Detective Keller and providing that confession."

- 13 -

Petitioner agreed that he asked for a continuance during his Davidson County post-conviction case, but he stated that he was "not given that later date." Petitioner noted that he had a letter from Davidson County post-conviction counsel stating that, immediately after the Davidson County post-conviction hearing, the prosecutor only presented the letter introduced at the suppression hearing. However, "a couple of months later," Davidson County post-conviction counsel wrote again, saying that he "finally received it, but the record had already been put in and they were not able to go back into the courtroom."

Two letters from Davidson County post-conviction counsel were received as exhibits. In the first letter dated May 31, 2019, Davidson County post-conviction counsel wrote,

> [I]mmediately after our last date, the DA provided me with letters that were identical to what I had submitted into evidence at our hearing; the DA did not provide anything new. She informed me that those letters were all [the Williamson County prosecutor] had in her possession. When we had talked about there being another court date, it was premised on there being additional letters we could submit into evidence. Due to these letters being in regard to a separate out-of-county case and due to this being a post-conviction case, my subpoena/discovery powers are nowhere near as great as I'd like them to be. As a result, [the post-conviction court] went ahead and ruled on your petition.

Davidson County post-conviction counsel advised Petitioner to proceed with his post-conviction petition in Williamson County and have post-conviction counsel send a "detailed and comprehensive" discovery request for all documents in the Brentwood Police Department's possession.

The second letter was dated December 26, 2019. Davidson County post-conviction counsel stated that he had previously sent Petitioner a copy of the post-conviction hearing transcript and letters that he had received from the State "well after the appeals deadline forced [him] to go forward with filing [the] appeal."

Trial counsel testified that he did not remember if Petitioner suggested a possible double jeopardy issue while counsel was working on the direct appeal. Trial counsel stated that, to his recollection, thefts occurred from each victim such that no double jeopardy issue existed. Trial counsel noted that he did not raise a double jeopardy issue in the motion for new trial. He agreed that he was "tasked" with raising meritorious issues as an attorney.

Upon reviewing Mr. Reynolds' letters, trial counsel testified that, due to the passage of time, he did not recall which of the letters were introduced at the suppression hearing or

if some were not given to him. Trial counsel stated a defense investigator worked on Petitioner's case, who "tried to hunt down" Mr. Reynolds, performed a background check on Mr. Reynolds, and reviewed the discovery materials. When asked which letters he would have introduced at the suppression hearing, trial counsel stated, "I mean [the March 12 letter] definitely I can see why I entered that. The one dated March 30 . . . I probably would have entered . . . . [P]ossibly, March 25th . . . . I mean they are all kind of relevant[.]" When asked whether he would have introduced the letters in front of the jury, trial counsel responded, "Absolutely not."

On cross-examination, trial counsel testified that, to his recollection, no double jeopardy issue existed "because they were four separate crimes." When asked whether he would have introduced the March 25 and 30 letters at the suppression hearing, trial counsel stated that he would not "just exclude them[.]" Trial counsel agreed that Petitioner testified at the suppression hearing that he was "influenced and coerced" by Mr. Reynolds. Trial counsel did not remember discussing the letters with Petitioner.

When asked whether the letters showed a pattern of Mr. Reynolds' trying to induce Petitioner to admit to culpability in order to benefit himself, trial counsel responded, "[T]hat was brought up at the [s]uppression hearing. The problem was Detective Keller came and said he didn't give [Mr. Reynolds] any go ahead to do any of that and he was acting on his own." When asked if additional letters could have shown the trial court how Petitioner was coerced, trial counsel stated, "Possibly, I don't know. And obviously, he was prejudiced in that Motion to Suppress because it was ultimately overruled." However, trial counsel also stated, "I don't know what the [j]udge would have done."

The post-conviction court continued the proceedings in order to obtain copies of the trial transcript.[5] At the third post-conviction hearing on January 27, 2023, Petitioner entered as an exhibit a September 19, 2017 letter he wrote to trial counsel, in which he requested changes to his brief in the direct appeal. Relevant to his post-conviction case, a handwritten note at the bottom of the typed letter read, "Why didn't you bring up 'Double Jeopardy'? Would only have one charge only 12 years[.]" Trial counsel responded in a letter that he appreciated Petitioner's "input" but would "stand by" the brief counsel had written.

The trial transcript was received as an exhibit and, relevant to this appeal, reflected that Petitioner held the younger child at gunpoint and stayed with the family during the incident. Relative to Petitioner's appearance, the father testified that Petitioner was wearing a knit hat and a bandana over his face; the mother testified that Petitioner was

_____

[5] For an unknown reason, the trial transcript was not available to the parties or the post-conviction court at the time of the second post-conviction hearing.

- 15 -

wearing a "beanie" hat, a bandana over his face, a dark sweatshirt, khaki shorts, and Vans style shoes; and the older son testified that Petitioner was wearing black shoes and socks, khaki shorts, and a bandana. A Walmart asset protection manager testified that, soon after the robbery, Petitioner and the co-defendants unsuccessfully attempted to use one of the father's credit cards at a Nashville Walmart, where they were captured on a surveillance recording. The mother agreed that a photograph of Petitioner taken from the surveillance recording showed Petitioner wearing consistent clothing, although his shirt had short sleeves in the photograph. In addition, cell phone location data placed a co-defendant in the geographic area of the family's home around the time of the robbery.

Relative to the stolen items, the trial testimony established that the father's wallet and its contents were stolen, as well as the mother's purse, which contained a large amount of cash. The older child testified that his "PS-3" was taken from the living room near the television. The younger child testified that his backpack was taken. The father testified that he had purchased the gaming systems as birthday gifts for each child and that the handheld gaming system belonged to the younger child.

The post-conviction court entered a written order on February 16, 2023, denying relief; the court only addressed the double jeopardy claim. The post-conviction court found that four "takings" had occurred—the father's wallet and its contents, the mother's purse and cash, and "the gaming system and backpack" from the respective children. The post-conviction court noted that trial counsel argued to the jury "that the State had failed to carry its burden of proof . . . that the gaming system and backpack belonged to the children rather than the parents; the jury found otherwise." The post-conviction court found that trial counsel was not deficient for failing to raise a double jeopardy issue at trial or on appeal. The post-conviction court concluded that no double jeopardy violation occurred and that, accordingly, the results of Petitioner's trial and direct appeal would not have been different.

*Analysis*

On appeal, Petitioner contends that the post-conviction court erred in denying his claim that trial counsel provided ineffective assistance by (1) failing to raise at trial or on appeal a double jeopardy issue relative to the aggravated robberies of the children in Counts 7 and 8; and (2) failing to raise a *Brady* issue related to the State's failure to disclose the March 20, March 25, and March 30, 2014 letters from Mr. Reynolds to Detective Keller. Petitioner also raises a freestanding *Brady* issue related to the delayed disclosure of the letters. The State responds that trial counsel's representation was not deficient, that Petitioner has not proven prejudice, and that Petitioner has waived his freestanding *Brady* claim.

- 16 -

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

## I. Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, this court "need not address both elements if the petitioner fails to demonstrate either one of them." *Kendrick*, 454 S.W.3d at 457. Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions

were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### a. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution guarantees "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." V Tenn. Const. art. I, § 10. Both clauses provide three distinct protections: "(1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012).

With respect to the third category, the double jeopardy prohibition operates to prevent prosecutors and courts from imposing punishment that exceeds that authorized by the legislature. *Id.* at 542. Such single prosecution, multiple punishment claims ordinarily fall into one of two categories: (1) "unit-of-prosecution" or (2) "multiple description" claims. *Id.* at 543. A unit of prosecution claim can arise when a defendant is convicted of multiple violations of the same statute. *Id.* As Petitioner correctly notes, this court has concluded that the unit of prosecution for robbery is the number of thefts that occurred. *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003).

In *Franklin*, a co-owner of a convenience store and a clerk were present when the defendants stole cash from the register during a robbery. *Id.* This court concluded that the proper unit of prosecution for robbery was the number of thefts that occurred; accordingly, the defendants' convictions for two counts of robbery violated principles of double jeopardy because only one theft occurred. *Id.* This court instructed the trial court to reduce the conviction for one of the aggravated robbery counts to aggravated assault; in a footnote, this court suggested that the trial court alter the judgment for the conviction involving the clerk because the co-owner "suffered the actual loss of the cash[.]" *Id.* at n. 2.

- 18 -

Petitioner relies on *Franklin* in support of his contention that "there were only two victims, the parents, who were the proper owners of the property taken[.]" However, *Franklin* lends no support for Petitioner's novel argument that, for purposes of our criminal code, children are incapable of having an ownership interest in property purchased for them by their parents. Petitioner cites to no authority for this proposition.

Moreover, Petitioner's reliance on *Franklin* related to the number of thefts that occurred is misplaced. *Franklin* is distinguishable from the robbery in Petitioner's case— one sum of cash taken from a single register in the presence of two people is very different from the theft of several items from family members, all of whom were present during the robbery and identified at trial the items they individually owned.[6]

The record does not preponderate against the post-conviction court's finding that trial counsel's performance was not deficient and that Petitioner was not prejudiced at trial or on appeal. Because the evidence at trial established discrete takings from each victim, trial counsel was not deficient for failing to raise a futile issue at trial or on appeal. Likewise, because the record reflects that no double jeopardy issue existed, Petitioner was not prejudiced. Petitioner is not entitled to relief on this basis.

### b. Failure to raise a *Brady* issue on appeal

Petitioner contends that trial counsel was ineffective for failing to raise a *Brady* issue on appeal related to Mr. Reynolds' three allegedly withheld letters.[7] He notes trial counsel's testimony that, had counsel known the other letters existed, he would have introduced them all at the suppression hearing and trial counsel's agreement that Petitioner was prejudiced. The State responds that trial counsel was not deficient and that Petitioner was not prejudiced, noting that trial counsel also testified that he was unsure what the judge would have done had the additional letters been presented.

The United States Supreme Court stated in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The State is responsible to disclose "any favorable evidence known to the others acting on the government's behalf in the case,

---

[6] We note that this court's reference in *Franklin* to the co-owner of the convenience store as the person who suffered an "actual loss" was made in the context of suggesting which of the two robbery convictions the trial court could modify to aggravated assault on remand. Its optional phraseology and location in a footnote suggests that it is most appropriately classified as dicta.

[7] We note that Petitioner has included in his brief a significant amount of caselaw related to the loss or destruction of evidence. *See, e.g., State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). However, none of the evidence at issue here was lost or destroyed.

including police." *Strickler v. Greene*, 527 U.S. 263, 307 n.12 (1999). Four prerequisites must be satisfied to establish a *Brady* violation:

> 1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
>
> 2. The State must have suppressed the information;
>
> 3. The information must have been favorable to the accused; and
>
> 4. The information must have been material.

*State v. Edgin*, 902 S.W.2d 387, 389 (Tenn. 1995), *as amended on reh'g* (July 10, 1995). Even if the defendant does not specifically request evidence, favorable evidence is material, and its suppression is a constitutional violation, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

In the first post-conviction order, the post-conviction court found that trial counsel filed a motion to suppress Petitioner's police statement, that trial counsel presented proof at the suppression hearing of Mr. Reynolds' "history as a jail informant, and of Det[ective] Keller providing Mr. Reynolds with two postage stamps"; and that Detective Keller's inconsistent testimony about his motivation for giving Mr. Reynolds the stamps occurred in Davidson County several years after the Williamson County trial. The post-conviction court concluded that trial counsel was not deficient for failing to anticipate "an event that did not happen until years later."

Relative to the additional letters, the post-conviction court noted that this court "reviewed all of the evidence [Petitioner] faults [trial counsel] for allegedly not presenting at the Williamson County suppression hearing and affirmatively found 'the letters contain no new information that would bear on an agency relationship.'" *Frelix II*, 2020 WL 58881144, at *11. The post-conviction court agreed and concluded that Petitioner "failed to carry his burden of proof that [trial counsel] could have discovered other facts that would have persuaded the trial court to grant the motion to suppress." The post-conviction court also concluded that, even if Petitioner's statement had been suppressed, the State's evidence was sufficient to support his convictions, explaining:

The victims described [Petitioner]'s distinctive clothing. [Petitioner] was recorded wearing this same clothing by security video cameras at a retail establishment where he used a credit card stolen from the victims during the robbery. Evidence obtained from cell phone towers permitted a reconstruction of the movements of a cell phone belonging to another of the persons accompanying [Petitioner] prior to, during, and following the robbery. This cell phone was in the vicinity of the scene of the robbery at the time the crime was committed.

As a preliminary matter, Petitioner does not explain in his brief how the three letters at issue are exculpatory or material. *See* Tenn. R. App. P. 27(a)(7) (providing that an appellant's brief shall contain an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief"). The letters predominantly contain discussion of offenses in Davidson County or veiled references to unspecified valuable information—as post-conviction counsel acknowledged during the second post-conviction hearing, the letters do not exculpate Petitioner for the Williamson County offenses.

Relative to materiality, this court has previously considered the content of the allegedly withheld letters in the context of the Davidson County post-conviction proceedings; we note that all four letters authored by Mr. Reynolds were late-filed and part of the appellate record. *Frelix II*, 2020 WL 5888144, at *9. In that appeal, Petitioner asserted that his Davidson County trial counsel was ineffective for failing to file a motion to suppress his police statement using the letters and evidence of the two stamps Detective Keller gave Mr. Reynolds. *Id.* *11. This court concluded that the letters were "merely duplicative of proof already considered by this court and the Williamson County court in determining the issue" of whether Mr. Reynolds had an agency relationship with the State. *Id.* This court concluded that Petitioner had not proved prejudice, reasoning as follows:

> Of the three omitted letters, one was written and postmarked March 30th, after [] Petitioner's challenged statements to law enforcement . . . . We observe that there was no new communication from Mr. Keller to Mr. Reynolds and that nothing in Mr. Reynolds's letters indicated that he was being directed to act or compensated for eliciting information . . . . We conclude that the letters contain no new information that would bear on an agency relationship. *See* [*State v. Willis*, 496 S.W.3d 653, 712 (Tenn. 2016)] ("Evidence that [the informant] reached out to law enforcement officers does not equate to evidence of actions by law enforcement officials manifesting assent to have [the informant] act as a government agent[.]"). Accordingly, the appellate court, when it reviewed the videos of the March 20th and 26th meetings with Detective Keller, had all the existing evidence pertinent to any

agreement made by the government, acting through Detective Keller, with Mr. Reynolds. This court reviewed the evidence and concluded that Mr. Reynolds was not a State agent. [*Frelix I*], 2018 WL 2722796, at *17.

*Frelix II*, 2020 WL 5888144, at *11.

The record supports the post-conviction court's finding that the additional letters do not include information that would have changed the outcome of the suppression hearing, such as evidence that Detective Keller had asked Mr. Reynolds to work on his behalf. We note that, although the letters contained requests for food, cigarettes, and assistance with a jail transfer, they do not contain any indication that these requests were fulfilled.

In addition, the record supports the post-conviction court's conclusion that Petitioner was not prejudiced. Even excluding Petitioner's confession, the State's evidence was more than sufficient to support Petitioner's convictions. The trial record reflects that the father testified that Petitioner was wearing a knit hat and a bandana over his face; the mother testified that Petitioner was wearing a "beanie" hat, a bandana over his face, a dark sweatshirt, khaki shorts, and Vans shoes; and the older son testified that Petitioner was wearing black shoes and socks, khaki shorts, and a bandana. The mother agreed that a photograph of Petitioner in a surveillance recording from that evening showed Petitioner wearing consistent clothing, although his shirt had short sleeves in the photograph. The trial record also reflects that Petitioner was shown on a surveillance recording soon after the home invasion wearing consistent clothing in an establishment where he used a credit card stolen from the victims during the robbery and that cell phone location data placed a co-defendant in the geographic area of the family's home around the time of the robbery. Because no reasonable probability existed that the outcome of Petitioner's trial would have been different if the additional letters were disclosed, the letters are not material, and no *Brady* violation occurred. In turn, because a *Brady* issue would have been unsuccessful on appeal, trial counsel was not deficient for failing to raise it, and Petitioner was not prejudiced.

## II. *Brady Violation*

In a related issue, Petitioner states without elaboration that the post-conviction court "erroneously dismissed the *Brady* violations as . . . moot[,] ruling they had been considered in the Davidson Post[-]Conviction Relief which had been ultimately denied by" the Davidson County post-conviction court. However, as noted by the State, Petitioner never raised a freestanding *Brady* issue in his petition, as amended, including in the Notice.

Generally, issues not raised in the post-conviction petition are subject to waiver. *See, e.g., Foley v. State*, No. M2018-01963-CCA-R3-CD, 2020 WL 957660, at *7 (Tenn.

Crim. App. Feb. 27, 2020) (citing *Angel v. State*, No. E2018-01551-CCA-R3-PC, 2019 WL 6954186, at *7 (Tenn. Crim. App. Dec. 18, 2019)).  In addition, this court is without authority to consider issues that were not addressed by the post-conviction court.  *Holland v. State*, 610 S.W.3d 450, 459 (Tenn. 2020); *see* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error").  To the extent that Petitioner has attempted to raise a freestanding *Brady* issue, it has been waived.

## *Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE